Douglas F. Foley, WSBA #13119
e-mail: doug.foley@dougfoleylaw.com
Alayna L. Nicholes, WSBA #40993
e-mail: alayna.nicholes@dougfoleylaw.com
Foley Sampson & Nicholes, PLLC
13115 N.E. 4th Street, Suite 260
Vancouver, Washington 98684
Telephone: 360.883.0636
Facsimile: 360.944.6808
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, an Illinois Corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>ROGER A. PLAUTZ and LINDA S. PLAUTZ, husband and wife; ROBERT S. APGOOD, individually and as Trustee for the ROBERT S. AND NANCY B. APGOOD LIVING TRUST; JAMES S. GLENN and "JANE DOE" GLENN, husband and wife; and LEGACY HOME INSPECTIONS, LLC, a Washington Limited Liability Company,<br><br>     Defendants. | Civil No.: 2:22-cv-00068<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Allstate Property and Casualty Insurance Company (hereinafter "Allstate"), by and through its attorneys Douglas F. Foley, Alayna L. Nicholes of Foley Sampson & Nicholes, PLLC, hereby alleges as follows:

## I.   PARTIES AND JURISDICTION

1.   This action for Declaratory Judgment is one in which the United States District

Page 1 – COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

Court is given original jurisdiction by reason of diversity of citizenship and the requisite amount in controversy exceeds $75,000 pursuant to Title 28, U.S.C. §1332.

2.      Allstate is an Illinois corporation authorized to transact the business of insurance in the State of Washington, whose principal place of business is in the State of Illinois and is deemed a citizen of Illinois for diversity jurisdiction.

3.      Roger A. Plautz and Linda S. Plautz, husband and wife, are residents of Douglas County, State of Washington, and are citizens of Washington.  Allstate issued a Homeowners Policy and Personal Umbrella Policy to Roger A. Plautz and Linda S. Plautz, providing certain coverages subject to the terms, definitions, limitations, conditions, and exclusions contained in the insurance contracts.

4.      Robert S. Apgood, individually and as Trustee for the Robert S. and Nancy B. Apgood Living trust, is a resident of Snohomish County, State of Washington, and is a citizen of Washington.  Robert S. Apgood, individually and as Trustee for the Robert S. and Nancy B. Apgood Living Trust filed a civil action in Snohomish County Superior Court naming, in part, Roger A. Plautz and Linda S. Plautz, as defendants.  The case number for the Snohomish County Superior Court action is 21-2-05991-5.

5.      James S. Glenn and "Jane Doe" Glenn, husband and wife, are believed to be residents of King County, State of Washington, and are citizens of Washington.  James S. Glenn and "Jane Doe" Glenn are named defendants in the action filed by Robert S. Apgood in Snohomish County Superior Court, case number 21-2-05991-5.

6.      Legacy Home Inspections, LLC, was a Washington Limited Liability Company that was managed and governed solely by Defendant James S. Glenn.  Defendant James S. Glenn voluntarily dissolved the LLC on April 15, 2021.  Legacy Home Inspections, LLC, is a named defendant in the action filed by Robert S. Apgood in Snohomish County Superior Court, case number 21-2-05991-5.

///

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

## II.   <u>UNDERLYING CLAIMS</u>

7.      This matter involves a claim made by a buyer of a residence located at 5829 Silvana Terrace Road in Stanwood, Washington (hereinafter referred to as the "Residence"), that a home inspector and the sellers of the Residence misrepresented the condition of the Residence to the detriment of the buyer.  On or around July 2, 2018, Robert A. Apgood purchased the subject Residence from Roger A. Plautz and Linda S. Plautz.  Prior to purchasing the Residence, Mr. Apgood was provided with copies of certain documents related to the Residence prepared by the Plautzes and James S. Glenn, of Legacy Home Inspections.  Mr. Apgood alleges that his decision to purchase the Residence was due in large part to the representations made by the Plautzes and Mr. Glenn, and that he would not have purchased the Residence absent the representations made by the Plautzes and Mr. Glenn.  Mr. Apgood claims that he has suffered monetary losses as a result of his reliance on the misrepresentations made by the Plautzes and Mr. Glenn.

8.      A copy of the Snohomish County Superior Court Complaint filed on December 16, 2021, is attached as Exhibit 1 and is incorporated herein.  The following statement of facts is extracted from the Complaint.  Allstate does not necessarily agree to the veracity of any of the facts or claims alleged but recites the following facts for the sole purpose of identifying the issues in dispute in this matter with respect to the coverages provided by Allstate, subject to the terms, definitions, exclusions and conditions of the insurance contract issued by Allstate.  The pertinent portions of the Complaint are referenced in the following paragraphs set forth below:

> COME NOW, Plaintiffs ROBERTS. APGOOD and the ROBERTS. AND NANCY B. APGOOD LIVING TRUST, ROBERTS. APGOOD, Trustee by and through their attorney of record, SPENCER FREEMAN of FREEMAN LAW FIRM, INC. and bring this action against Defendants ROGER A. PLAUTZ and LINDA S. PLAUTZ and the marital community composed thereat~

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

JAMES S. GLENN and JANE DOE GLENN and the marital community composed thereof and LEGACY HOMES INSPECTIONS, LLC, and allege as follows:

## INTRODUCTION

This is an action brought by Plaintiffs Robert S. and Nancy B. Apgood Living Trust and Robert S. Apgood, individually and Robert S. Apgnod as trustee of the Robert S. and Nancy B. Apgood Living Trust seeking civil damages against the above-named defendants. The civil claims include statutory tort causes of action sounding in Fraud in the Inducement and Negligence.

## JURISDICTION AND VENUE

This Court has original jurisdiction in this matter because Roger and Linda Plautz reside in Snohomish County and all actions alleged herein, including those by Glenn and Legacy Home Inspections. LLC occurred in Snohomish County. (Complaint ¶1) Personal jurisdiction and venue are proper in this Court pursuant to RCW 4.12.020 as the events giving rise to these claims occurred in Snohomish County, Washington. (Complaint ¶2)

## PARTIES

Plaintiffs Robert S. Apgood and the Robe1i S. and Nancy B. Apgood Living Trust, Robert S. Apgood, Trustee (hereafter collectively "Apgood") reside in Snohomish County. (Complaint ¶3) Defendants Roger A. Plautz and Linda S. Plautz (hereafter collectively "Plautz") are a married couple who reside in Snohomish County. All actions alleged herein were for the benefit of each, individually, and for the benefit of their marital community. (Complaint ¶4) Defendant James S. Glenn is married to Jane Doe Glenn (hereafter collectively "Glenn") residing in King County. AH actions alleged herein were for the benefit of each, individually, and for the benefit of their marital community. (Complaint ¶5) Defendant Legacy Home Inspections, LLC was, at all times relevant to the allegations herein, an active Washington Limited Liability Company whose Governor

Page 4 –  COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

was James S. Glenn. Defendant Glenn voluntarily
dissolved the LLC on April 15, 2021. (Complaint ¶6)

## FACTS

Robert Apgood was widowed in March 2014.
(Complaint ¶7) In late 20l6, Mr. Apgood began dating a
woman who lived in England. After spending about a
year traveling back and forth between England and the
United States, Apgood sold his home and moved lo
England. (Complaint ¶8) Apgood married Jane Foulkes
from England in November 2017. Unsure al first about
where they wanted to settle, they finally decided to move
back to Washington to be near Mr. Apgood's son and his
family. To that end, Apgood began looking for a new
home. This search was conducted almost exclusively
from England. (Complaint ¶9) Plautz admits to being the
builder of the residence at 5829 Silvana Terrace Road in
Stanwood, Washington. (Complaint ¶10) In January 2018,
Apgood discovered a real estate for sale listing for the
residence located at 5829 Silvana Ten-ace Road,
Stanwood, Washington (hereafter "5829 House").
(Complaint ¶11) After contacting Plautz by way of
Apgood's Real Estate agent, Apgood was provided
copies of a number of documents related to the 5829
House. Included in those documents were a *Confidential
Inspection Report* (hereafter "Report") *(Declaration of
Robert S. Apgood in Support of the Complaint* [Apgood
Decl.], ¶¶ 1-3, Exhibit "A") prepared for Plautz by
Defendants Glenn and Legacy Home Inspections, LLC
(hereafter "Legacy"), along with the *Form 17 Seller
Disclosure Statement, improved Property* (hereafter
"Form 17") (*Apgood Decl., ¶* 4, Exhibit "B"). (Complaint
¶12) Since Apgood was residing in England, it was
impractical to fly back to Washington in order to inspect
every potential purchase. Houses were selling quickly,
and frequently sold before he could physically travel to
Washington. As such, he relied heavily on his son and
his Real Estate agent to make visual inspections and
report their findings. *Apgood Decl.* ¶ 5. (Complaint ¶13)
Neither the Real Estate agent, nor Apgood's son are
licensed building contractors and, as such, Apgood
necessarily relied upon the expressions of the seller and
its experts. (Complaint ¶14) Apgood reasonably relied
heavily on the representations of Glenn and Legacy in

Page 5 –  COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

the Report, to his detriment. *Apgood Decl.* ¶ 6.
(Complaint ¶15) Apgood reasonably relied heavily on
Form 17 from Plautz, to his detriment. *Apgood Decl.*¶ 7.
(Complaint ¶16) On July 2, 2018, Apgood purchased the
home from Plautz. (Complaint ¶17) Apgood's purchase of
the home was in large part based upon the
representations of Glenn and Lacey in the Report and
Plautz on Form 17. Absent these representations,
Apgood would not have purchased the home. (Complaint
¶18)

### A.   REPORT

19. The Report comprises approximately l6 pages
and was prepared by Defendants Glenn and Legacy
pursuant to an inspection of the 5829 House purportedly
on February 18, 2018. (Complaint ¶19) In the Report, at
page 14, Glenn claims that he possesses affiliations and
certifications in the following: a. ASHI (American
Society of Home Inspectors) member #244775; 1[1] b.
Licensed Structural Pest Inspector #69260 (presumably
from the Washington State Department of Agriculture
Structural Pest Inspectors); and c. Washington State
Home Inspectors Lie# 325. (Complaint ¶20) Page 2 of the
Report contains the following disclaimer: The
observations and opinions expressed within this report
are those of Legacy Home Inspections and supercede
*[sic]* any alleged verbal comments. We inspect all of the
systems, components, and conditions described in
accordance with the standards of American Society of
Home inspectors and those that we do not inspect are
clearly disclaimed in the contract and/or in the
aforementioned standards. However, some components
that are inspected and found to be functional may not
necessarily appear in the report, simply because we do
not wish to waste our client's time by having them read
an unnecessarily lengthy report about components that
do not need to be serviced. (Complaint ¶21) On page 3 of
the Report, under the caption, "Scope of Work," Glenn
and Legacy represent: You have contracted with Legacy
Home Inspections to perform a generalist inspection in

---

[1] A recent search of the members at https://www.homeinspector.org/MembershipDirectory/fndex did not yield any
results confirming this claim. *Apgood Decl.*, ¶ 28

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

accordance with the standards of practice established by American Society of Home Inspectors, a copy of which is available upon request. Generalist inspections are essentially visual, and distinct from those of specialists, inasmuch as they do not include the use of specialized instruments, the dismantling of equipment, or the sampling of air and inert materials. Consequently, a generalist inspection and the subsequent report will not be as comprehensive, nor as technically exhaustive, as that generated by specialists and it is not intended to be. **The purpose of a generalist inspection is to identify significant defects or adverse conditions that would warrant a specialist evaluation.** Therefore, you should be aware of the limitations of this type of inspection, which are clearly indicated in the standards. However, the inspection is not intended to document the type of cosmetic deficiencies that would be apparent to the average person, and certainly not intended to identify insignificant deficiencies. (Emphasis added). (Complaint ¶22) Based upon the representations by Glenn and Legacy in the Report, Apgood reasonably concluded that a duplication of inspection efforts would be an unnecessary expenditure. *Apgood Decl.* ¶8. (Complaint ¶23) Upon information and belief, Plautz made the Glenn and Legacy Report available so that Apgood would not make arrangements for a new inspection. (Complaint ¶24) In the Report, on 2, Glenn and Legacy represent that, at the time they conducted the inspection, the "owners" (the Plautz defendants) were present. (Complaint ¶25)

### Roof

Pages 4-5 of the Report relate to the roof. Of note, the Repo11 does not indicate any problems with leakage or damage. The Report makes no reference to the high number of shingles damaged by improper pressure washing of the roof The Rep01t does not contain any reference to roof sagging damage caused by prolonged leaking damaging the underlayment OSB boards. Apgood relied heavily of the lack of repo1iing of roof damage caused by water leakage and improper pressure washing, to his detriment. (Complaint ¶26) In the Spring of 202 L Apgood retained the services of Krown LLC Roofing and Gutter Specialists to replace his roof. *Declaration of Mike Bieniek* ("Bieniek Decl."), ¶¶ 1-7,

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

10. This retention was due to discovered leaking of the roof. (Complaint ¶27) In his cursory inspection of the house, Mr. Bieniek noted that the existing roof was of a style known as "Presidential" and was expected to have a life of 40-50 years. *Id.* at 29. Upon further inspection, Mr. Bieniek noted that a substantial number of the shingles had been compromised by, based upon his experience and expertise, an extremely high-pressure pressure washing that had removed most of the grit on the shingles, leaving only the flimsy fiberglass base. *Id. at* ¶ 9. (Complaint ¶29) In his declaration, Mr. Bieniek informs us, "My roofing team began the process of removing the old roof. During that process, my team encountered significant damage to three 4' x 8' sheets of OSB material that were the foundation for the roof. The OSB layer is the hard layer into which all nails are driven to make the roof hold it shape an<l is "foundation" of the roofing material. This damage was caused by water leakage through the. roof. They removed these damaged sheets and, upon their removal, entered into the attic space over the garage. The OSB that was removed fell apart in my team's hands. They alerted me to this damage and l inspected it, confirming their conclusions that there had been leakage causing the damage. The three sheets were replaced by new sheets. Although the photograph was taken after the roof was replaced, Exhibit B shows the inside of the attic space where the sag existed. The blue lines approximate the route of the sag, and the red circle shows where significant water staining occurred as a result of the extensive leaking." *Bieniek Decl.* ¶ 11-12. (Complaint ¶30) The Krown team also observed evidence of roof leakage in the form of water stains. Of greater significance, they found an area containing evidence of significant previous leakage that also had a large blue plastic tote that had been positioned to capture water from rains entering the attic space through holes in the roof. *Id. at* ¶ 13 and Exhibits C, D and E thereto. (Complaint ¶31) Based upon the presence of the blue plastic tote positioned to capture water from the leaking roof, Plautz was aware the roof of the home leaked water. (Complaint ¶32) Mr. Bieniek, when describing that the roof tiles were of the "Presidential" style, observed that, in his experience, the roofing material had not been installed by someone who had the specialized training in installing "Presidential" roofs. *Id.*

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

*at* ¶ 14. (Complaint ¶33) In the tear-off of the old roofing material, the Krown team encountered numerous spots where material that was close in color to the Presidential roof; but were not Presidential material, had been inserted to cover holes that would have otherwise resulted in leaking through the roof. In the removal process of these inserted material, when the inserted material was removed, the Krown team observed that they covered holes that had been "blasted" through the roof in the pressure washing process. *Id. at* ¶ 15. (Complaint ¶34) Mr. Bieniek also observed that several "ridge vents" had been insubstantial for the pitch of the roof and had resulted in leaking in other areas of the roof during rains with high winds. *Id. at* ¶ 16-17. (Complaint ¶35) Mr. Bieniek reviewed the Report and agreed with Glenn and Legacy that the roof was approximately slightly older than half the age that should be expected in a Presidential roof. *Id at* ¶ 19. (Complaint ¶36) The Report makes statements about the roof and what makes a roof water resistant which are plain wrong, but what would lead a potential buyer to believe that problems did not exist with the roof. Moreover, the Report does not contain reference to the significant stains and damage caused by the prolonged leakage. Neither does the Report reference the blue plastic tote that was apparent in its placement so as to catch rain water leaking into the attic space. *Id. at* ¶ 20-21. (Complaint ¶37) The Report glaringly omits reference to findings in the secondary attic space, which is where the majority of the damage due to leakage is most apparent. *Id. at* ¶ 22. (Complaint ¶38)

### The Attic

The attic in the 5829 House comprises two (2) separate areas, which are not interconnected, each of which is accessed by different and wholly separate access points. The greater portion of the attic space is accessed via a ceiling trap door located in one of the walk-in closets in the master bedroom. The remaining space is accessed via a wall panel in a closet space in a different bedroom on the upper floor of the house and provides access to the attic space over the garage. This wall panel is very easily accessed and opens to the roof trusses over the garage. (Complaint ¶39) The section of

Page 9 –   COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

the Report that discusses Glenn and Legacy's inspection can be found on pages 11-13. (Complaint ¶40) In that section, Defendants Glenn and Legacy describe their findings in an area they entitled "Primary Attic" (pg. 11). There is a satisfactory description of the findings in the inspection accompanied by several photographs. (Complaint ¶41) The Report describes that that attic space was evaluated by "direct access." (Complaint ¶42)  What is glaringly missing in the Report is a discussion of Glenn and Legacy's findings from examination in the secondary attic space, which is located under the sagging portion of the roof where there was extensive damage to the roofing underlayment. (Complaint ¶43) What is also not found in the Report are any photographs of the secondary attic space, particularly of the evident water damage and stains. (Complaint ¶44) What is also not found in the Report is any discussion of evidence of active leaks in the root: nor of the plastic tote box that was placed under the location of the most egregious leak. (Complaint ¶45) The roof has leaked every year since it was purchased by Apgood during periods of hard rain and for which there was no apparent explanation. *Apgood Decl.* ¶ 18-19. (Complaint ¶46) Due to the improper sizing of the roof vest on the southwest comer of the house, water entered into the corner, ran down the inside of the wall, and caused damage to the wall and floor carpeting requiring remediation in an amount to be proved at trial. *Apgood Decl.* ¶¶ 21-27. (Complaint ¶47)

## **Electrical Panels**

The Report contains a section entitled "Electrical" (pgs 7-9) wherein Glenn and Legacy describe the history and current configuration of the e1ectrica1 service in the 5829 House. The Report describes the methodology for supplying service and is accompanied by photographs. The Report describes that "[t]here is a breaker that has been removed and the cover is missing. Knockout covers need to be installed into these openings." (Complaint ¶48) What the Report fails to disclose is that the two 200 amp, 220 volts panels were manufactured by "Challenger" (as the panel covers indicated). The Report further fails to disclose that Challenger panels had been fully recalled several years before Glenn and Legacy performed the inspection because the panels contained a latent defect

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

that caused them to spontaneously combust. *Apgood Decl. ¶9.* (Complaint ¶49) Apgood did not know of the dangerous condition of the Challenger panels until after he had acquired a home backup generator and the installing electrician refused to do the electrical work necessary to connect the generator to the house electrical service citing to liability concerns arising from working on a service that had been fully recalled by the manufacturer. *Apgood Decl. ¶¶ 10-16.* (Complaint ¶50) Consequently, Apgood was forced to retain the services of an electrical contractor to completely replace the two panels This replacement cost Apgood $10,221.30. *Apgood Decl. ¶ 17.* (Complaint ¶51)

## B.     FORM 17

On February 25, 2018, the Plautz defendants executed the "Seller Disclosure Statement, Improved Property," commonly referred to as "Form 17." (Complaint ¶52) On Page 3 of 6 of form 17. under the section entitled "4. Structural" at sub-item "A" is the question. "'Has the roof leaked within the last 5 years?" Plautz checked the box in the "No" column and then each of the Plautz defendants initialed and dated the page. (Complaint ¶53)

## CLAIMS
### CLAIM I - **Fraud ln The Inducement**
### (AS AGAINST THE PLAUTZ DEFENDANTS)

Plaintiff hereby incorporates and re-alleges, as if folly set forth herein, each and every allegation in paragraphs 1-53. (Complaint ¶54) In Washington, there are nine elements of fraud. They are: (1) Representation of an existing fact; (2) Materiality of the representation; (3) Falsity of the representation; (4) The speaker's knowledge of its falsity; (5) The speaker's intent that it he acted upon by the plaintiff; (6) Plaintiff's ignorance of the falsity; (7) Plaintiffs reliance on the truth or the representation; (8) Plaintiff's right to rely upon it; and (9) Resulting damage. *Stiley v. Block,* 130 Wn.2d 486,505,925 P.2d 194 (1996). (Complaint ¶55) On Form 17, by checking the box in the "No" column in response to the question,  "Has the roof leaked in the last 5 years?' Plautz made a representation of an existing fact, thereby

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

satisfying element 1. (Complaint ¶56) The statement was material as to the condition of the roof and any resulting damage that might be caused by a leak, thereby satisfying element 2. (Complaint ¶57) The representation was false as the roof had been chronically leaking for several years, thereby satisfying element 3. (Complaint ¶58) Plautz knew that the representation was false, as evidenced by the blue plastic tote situated under the most egregious leaking portion of the roof thereby satisfying element 4. (Complaint ¶59) By checking the "No" box, Plautz intended that Apgood act upon the information by concluding that the statement, was true, thereby moving Apgood closer to purchasing the 5829 House, thereby satisfying element 5. (Complaint ¶60) Apgood did not know that the representation was false *(Apgood Decl.* ¶ 20), thereby satisfying clement 6. (Complaint ¶61) Apgood reasonably relied on the truth of the representation based upon Plautz's signing and dating Form 17, combined with the Report failing to indicate roof damage and leaking, thereby satisfying element 7. (Complaint ¶62) Apgood had a right to rely on the representations, because, in his experience in both purchasing and selling homes, he had never knowingly made such misrepresentations and had never encountered another seller who knowingly made such misrepresentations. Apgood's right of reliance is bolstered by the Report (coming from a purportedly licensed and certified inspection company), thereby satisfying element 8. (Complaint ¶63) Plaintiff was damaged by having to suffer numerous leaks and, ultimately, having to replace the roof at a cost of $$41,953.10, plus costs of remediation, thereby satisfying clement 9. (Complaint ¶64)

## CLAIM II – Negligence

### (AS AGAINST THE GLENN AND LEGACY DEFENDANTS)

Plaintiff hereby incorporates and re-alleges, as if fully set forth herein, each and every allegation in paragraphs 1- 64. (Complaint ¶65) In Washington, there are five elements of negligence. They are: (1) Duty -- The defendant owed the plaintiff a duty, either to act (or refrain from acting) in a certain way, as would he

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

expected from a "reasonable" person. (2) Breach of Duty -The defendant acted ( or failed to act) contrary to his or her duty. (3) Cause in Fact - The defendant's breach of duty, in fact, resulted in the plaintiffs injuries (would the injury have occurred without the defendant's alleged negligence'?). (4) Proximate Cause -The defendant's actions or inactions were within the scope of known risks; the defendant "should have known" an injury could occur. (5) Damages - The plaintiff in fact suffered injuries, physical or otherwise, as a result of the defendant's negligence. (Complaint ¶66) Glenn and Legacy. as a "Certified Home Inspector," owed a duty to pc1form the inspection "with the standards of practice established by American Society of Home Inspectors." *Report at pg. 3,* satisfying clement 1. (Complaint ¶67) Glenn and Legacy knew, or should have known, that the at69ic space inspected could not have been the total attic space covering the 5829 House. By failing to pe1fom1 the inspection thoroughly and completely. and by failing to inspect the entire attic space of the 5829 House, and by failing to identify and report on the Challenger panels having been recalled as fire hazards, they breached that duty, satisfying element 2. (Complaint ¶68) But for Glenn and Legacy's failure to detect these deficiencies, Apgood would not have been forced to suffer the significant expense to effect the remediating replacements evidences that this breach was the cause-in-fact of Apgood's injuries, satisfying element 3. (Complaint ¶69) Glenn and Legacy's inaction in completely and thoroughly inspecting the roof and electrical service were completely within the scope of known risks in that they knew, or should have known, that failure to properly and completely inspect critical components of a house could lead to foreseeable injury caused by the roof and electrical panels being faulty, satisfying element 4. (Complaint ¶70) Apgood did, in fact, suffer the monetary injuries he did as a result of Glenn and Legacy's negligence requiring Apgood to suffer the expense of replacing them, satisfying element 5. (Complaint ¶71)

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

## CLAIM Ill - Negligence
### (AS AGAINST PLAUTZ)

Plaintiff hereby incorporates and re-alleges, as if fully set forth herein, each and every allegation in paragraphs 1-71. (Complaint ¶72) Plautz, as owner of the 5829 House, bad a duty to inform Glenn and Legacy of the secondary attic space where the water damage existed, satisfying element 1. (Complaint ¶73) Knowing that he was intending to use the Report as a tool to entice buyers to purchase the 5829 House, and further knowing that extensive damage to the roof resulting from water leaking through the roof was found in the secondary attic space. Plautz knowingly breached this duty to inform Glenn and Legacy in order to secret [sic] the damage, satisfying element 2. (Complaint ¶74) Secreting the secondary attic space damage from Glenn and Legacy was the true cause-in-fact that the Report does not address the secondary attic space and the damage contained therein, satisfying element 3. (Complaint ¶75) But for Plautz's secreting the secondary attic space, Glenn and Legacy would have discovered the water damage and included that information in the Report, satisfying element 4. (Complaint ¶76) As a result of secreting the secondary attic space, the Report contained no information on the water damage, resulting in Apgood eventually purchasing the 5829 House and subsequently being required to have a new roof installed in the amount of $41,953.10, satisfying element 5. (Complaint ¶77)

## PRAYER FOR RETIEF

WHEREFORE, Plaintiff Apgood respectfully requests that the Court enters judgement as follows:

1.      That the Court award Plaintiff Judgment against Defendants for general damages in an amount to be proven at the time of trial;

2.      That the Court award Plaintiff Judgment against Defendants for economic damages in an amount to be proven at the time of trial:

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

3.      That the Court award Plaintiff his costs, disbursements, and reasonable attorneys' fees incurred pursuing this action; and,

4.      That the Court awards Plaintiff such other or additional relief as is just a proper.

## III.    ALLSTATE INSURANCE POLICY PROVISIONS

9.      The Allstate APC416-1 Homeowners Policy and Personal Umbrella Policy (hereinafter referred to collectively as the "Policy") issued to Roger A. Plautz and Linda S. Plautz is attached as Exhibit 2 and is incorporated herein by reference.  The Policy provides the following pertinent coverages, terms, definitions, and exclusions:

"**Definitions Used In This Policy**
Throughout this policy, when the following words appear in bold type, they are defined as follows:
1.  **Bodily injury** means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
    a)      any venereal disease;
    b)      Herpes;
    c)      Acquired Immune Deficiency Syndrome (AIDS);
    d)      AIDS Related Complex (ARC);
    e)      Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
    a)      lead in any form;
    b)      asbestos in any form;
    c)      radon in any form; or
    d)      oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

        ***

6.  **Insured person(s)** –means **you** and, if a resident of **your** household:
    a)      any relative; and
    b)      any person under the age of 21 in **your** care.

Page 15 –COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

7.  **Insured premises** means:
    a)       the **residence premises**; and
    b)       under **Section II** only:
        1)       the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
        2)       any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
        3)       cemetery plots or burial vaults owned by an **insured person**;
        4)       land owned by or rented to an **insured person** where a single family dwelling is being built as that person's residence;
        5)       any premises used by an **insured person** in connection with the **residence premises**;
        6)       any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

8.  **Occurrence** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

9.  **Property damage** – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

\*\*\*

12. **Residence premises** means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

13. **We**, **us** or **our** means the company named on the Policy Declarations.

14. **You** or **your** means the person listed under Named Insured(s)on the Policy Declarations as the insured and that person's resident spouse.

\*\*\*

*Insuring Agreement*
In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**. This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

**COVERAGE X**
**FAMILY LIABILITY PROTECTION**

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitation of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**.  If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

\*\*\*

*Losses We Do Not Cover Under Coverage X and Coverage Y*

A. *Losses We Do Not Cover Under Coverage X:*

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

1.  **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

\*\*\*

4.  **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

5.  **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

\*\*\*

**C.  Losses We Do Not Cover Under Coverage X and Coverage Y:**
Coverage under **Coverage X – Family Liability Protection** will be excluded for **bodily injury** and **property damage** and coverage under **Coverage Y – Guest Medical Protection** will be excluded for bodily injury as follows:

1.  **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.  This exclusion applies even if:
  a) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
  b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
  c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

\*\*\*

11. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**."

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

The Allstate Indemnity Company Personal Umbrella Policy Form AS410 provides, in relevant part:

"**General Provisions**

***Definitions Used In This Policy***
1.    **Bodily injury** means:
      a)      physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body;
      b)      shock, mental anguish or mental injury.

**Bodily injury** does not include:
a)      any harm resulting from:
      i)      false arrest; false imprisonment; wrongful detention;
      ii)      wrongful entry; invasion of rights of occupancy; or
      iii)      libel; slander; humiliation; defamation of character; invasion of rights of privacy.
b)      any symptom, effect, condition, disease or illness resulting in any manner from:
      i)      lead in any form;
      ii)      asbestos in any form;
      iii)      radon in any form; or
      iv)      oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at any residence premises owned by an **insured person**.
c)      i)      any venereal disease;
      ii)      Herpes;
      iii)      Acquired Immune Deficiency Syndrome (AIDS);
      iv)      AIDS related complex (ARC); or
      v)      Human Immunodeficiency Virus (HIV);

      or any related or resulting symptom, effect, condition, disease or illness related to c) i) through v) above.

* * *

4.    **Insured person** means:
      a)      **you**, and any other person who is named on the Policy Declarations;
      b)      any person related to **you** by blood, marriage or adoption who is a resident of **your** household; or
      c)      any dependent person in **your** care, if that person is a resident of **your** household.

However, persons defined in 4 b) who are over the age of 25 are not **insured person**s for any **occurrence** arising

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

out of the ownership, maintenance or use of any motor vehicle owned by them.

5.      **Occurrence** means an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**, **personal injury** or **property damage**.

6.      **Personal injury** means harm resulting from:
a)      false arrest; false imprisonment; wrongful detention;
b)      wrongful entry; invasion of rights of occupancy;
c)      libel; slander; humiliation; defamation of character; invasion of rights of privacy.

Fines and penalties imposed by law are not included.

7.      **Property damage** means physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction.

8.      **Retained limit** means the amount of damages an **insured person** must assume and pay for any **occurrence** if:
a)      no underlying insurance is required; and
b)      no other insurance applies to the **occurrence**.

9.      **We**, **us** or **our** means the company named on the Policy Declarations.

10.     **You** or **your** means the policyholder named on the Policy Declarations and:
a)      that person's resident spouse; or
b)      if a resident of the same household, a party who has entered into a domestic partnership or civil union, as recognized by the state in which this policy was issued, with the policyholder named on the Policy Declarations.

* * *

**Insuring Agreement**
In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations.  In return, **you** must pay the premium when due and comply with all policy terms and conditions. This includes maintaining all Required Underlying Insurance.

Page 20 –COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

The terms of this policy impose joint obligations on persons defined as **insured persons.**  This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

This policy provides only excess insurance.  It does not contribute with any Required Underlying Insurance or other insurance which applies to an **occurrence**.  It also is excess to any retained limit an **insured person** assumes.

**When And Where The Policy Applies**
This policy applies to an **occurrence** anywhere in the world that takes place during the policy period.  The Policy Declarations show the policy period. This policy is not complete without the Policy Declarations.

* * *

**Required Underlying Insurance**
**You** must maintain the Required Underlying Insurance policy.  **You** must maintain the Required Underlying Insurance at or above the limits as shown on the Policy Declarations "Required Underlying Limit" at all times for each liability exposure any **insured person** has.  If **you** fail to maintain the Required Underlying Insurance policy applicable to the **occurrence**, there will be no coverage for any **insured person** under this policy until the damages exceed the Required Underlying Insurance limit for that exposure.  If the underlying insurance applicable to the **occurrence** does not provide at least the limits required under this section of this policy, **you** will be responsible for the damages up to the Required Underlying Insurance amounts.

If **you** maintain limits equal to or greater than the Required Underlying Insurance limits, this policy will apply as excess above the actual limits **you** maintain.  If any of **your** underlying coverage limits are used up, reduced, or canceled:
1.      **you** must try to replace the coverage; and
2.      **you** must notify us immediately.

* * *

*Excess Liability Insurance − Bodily Injury and*
*Property Damage*
*Coverage XL*

*Section 1*

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

Under Section 1 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising out of an **occurrence** that is both a loss **we** cover under **Excess Liability Insurance Bodily Injury and Property Damage Section 1** of this policy and a covered loss under **your** Required Underlying Insurance policy.

**We** will not pay any punitive or exemplary damages, fines and penalties.

This section does not apply to any **occurrence** that is covered under **Excess Liability Insurance – Personal Injury**.

***Losses We Cover Under Excess Liability Insurance - Bodily Injury and Property Damage – Section 1***
**We** will cover an **occurrence** arising only out of:
1.      Personal activities of an **insured person**.

2.      A volunteer civic service which an **insured person** performs without pay, for a not for profit corporation and which is not a function of that person's **business**.

        Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3.      The duties of **your** domestic employees who are not subject to Workers Compensation Laws.

***Amounts We Pay- Section 1***
**We** will pay only that amount of damages which exceeds the sum of:
1.      the limits specified in this policy for the Required Underlying Insurance under which the **occurrence** is a covered loss; plus
2.      the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

However, in no event shall **we** pay any amount above **our** limit of liability.  **We** will not pay the difference between the limits specified in this policy as Required Underlying Insurance and any lower limits actually in effect.

***Section 2***
Under Section 2 of this policy, **we** will pay damages which an **insured person** becomes legally obligated to

**Foley Sampson & Nicholes, PLLC**
13115 NE 4ᵗʰ Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

pay because of **bodily injury** or **property damage** arising only out of:

1.      a covered **occurrence** for which Required Underlying Insurance is not required by this policy; or

2.      a covered **occurrence** for which **you** are required by this policy to maintain Required Underlying Insurance but there is no Required Underlying Insurance in effect at the time of the **occurrence**.

**We** will not pay any punitive or exemplary damages, fines and penalties.

***Losses We Cover Under Excess Liability Insurance −
Bodily Injury and Property damage − Section 2***
**We** will cover an **occurrence** arising only out of:

1.      Personal activities of an **insured person**.

2.      A volunteer civic service which an **insured person** performs without pay, for a not for profit corporation and which is not a function of that person's **business**.

        Payment or reimbursement for reasonable expenses actually incurred by the **insured person** in connection with the volunteer civic service is not considered pay.

3.      The duties of **your** employees who are not subject to Workers Compensation Laws.

***Amounts We Pay − Section 2***
**We** will pay only that amount of damages which exceeds the sum of:

1.      the limits specified in this policy's Policy Declarations for Required Underlying Insurance required by this policy for the **occurrence** even though such Required Underlying Insurance was not in effect at the time of the **occurrence**; plus

2.      the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

However, if no other insurance is required or no other insurance applies to the **occurrence**, **we** will pay only those amounts which exceed the retained limit, up to the applicable limit of liability shown on the Policy Declarations.

In no event shall **we** pay any amount above **our** limit of liability.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

***Exclusions- Losses We Do Not Cover Under Excess Liability Insurance – Bodily Injury and Property damage – Section 2***
**Excess Liability Insurance – Bodily Injury and Property Damage – Section 2** will not apply:

1.      To any **occurrence** covered under **Excess Liability Insurance – Bodily Injury and Property damage – Section 1** or under **Excess Liability Insurance – Personal injury**.

1.      To any **occurrence** covered under **Excess Liability Insurance Bodily Injury and Property Damage Section 1** or under **Excess Liability Insurance Personal Injury**.

* * *

8.      To **property damage** to any:
   a)      property owned by an **insured person**; or
   b)      property owned by others which an **insured person** agreed to insure or for which an **insured person** agreed to be responsible.

* * *

11.      To **bodily injury** to:
   a)      any employee, other than a domestic employee who is not subject to workers compensation laws; or
   b)      any person arising out of corporal punishment administered by or at the direction of an **insured person**.

* * *

13.      To bodily injury or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.  This includes any bodily injury or **property damage** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person**.  This exclusion applies even if:
   a)      such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
   b)      such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

* * *

Page 24 –COMPLAINT FOR DECLARATORY JUDGMENT

15.     To any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

**We** will not apply this exclusion to **property damage** which results from heat, smoke or fumes from a **hostile fire**.

16.     To any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

17.     To any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

18.     To any **bodily injury** or **property damage** arising from any contract or agreement, whether written or oral.

19.     To any claim in which an **insured person** has concealed or misrepresented any material fact or circumstance if such misrepresentation or concealment of material fact or circumstance was made with the intent to deceive.

20.     To any **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

21.     To any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

* * *

24.     To any liability imposed upon any **insured person** by any civil, governmental or military authority

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from insects or rodents.

\* \* \*

## Section 3 – Common Provisions

### Limit Of Liability
**Our** total liability under **Excess Liability Insurance – Bodily Injury and Property Damage** for damages arising out of one **occurrence** will not exceed the " each occurrence" limit shown on the Policy Declarations, regardless of the number of:
1.      **insured person**s;
2.      claims;
3.      claimants;
4.      injured persons; or
5.      policies involved.

The "Annual Aggregate Limit"  for **Excess Liability Insurance – Bodily Injury and Property damage** shown on the Policy Declarations is the most **we** will pay for all damages resulting from all **occurrences** that occur during the policy period regardless of when the amounts were paid.

There will be no duplication of payments made under **Excess Liability Insurance – Bodily Injury and Property damage Section 1** and **Excess Liability Insurance – Bodily Injury and Property damage Section 2** of this policy.

### When We Pay
**We** will not begin to make payment for any damages resulting from an **occurrence** covered by this policy until **our** liability has been determined by:
1.      agreement between the claimant and us; or
2.      a final judgment against an **insured person**.

Claim for payment must be made within 12 months after determination of **our** liability.  If additional claims are filed due to the same **occurrence**, payment will be made within 30 days after the **insured person** gives us proper proof.

### Defense We Will Provide
**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy.  **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

When defense is provided by the insurer providing the Required Underlying Insurance or any other liability insurance, **we** maintain the right to join in the defense of any claim or suit which may require us to pay.

If the **insured person** fails to maintain the Required Underlying Insurance, **we** will not defend any **insured person** for any amount of damages falling within the Required Underlying Insurance limits.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons. In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate.

### Additional Payments We Will Make
In defending an **insured person**, **we** will pay the following regardless of **our** limits of liability:
1.      Premiums on appeal bonds and on bonds to release attachments.  **We** have no obligation to apply for or furnish these bonds.

2.      Court costs for defense.

3.      Interest accruing on damages awarded.  **We** will pay this interest only until **we** have paid, tendered or deposited in court the amount of damages for which **we** are liable under this policy.  **We** will only pay interest on the amount of damages for which **we** are liable under this policy, not exceeding **our** limits of liability.

**We** will repay an **insured person** for all reasonable expenses incurred at **our** request, arising from an **occurrence we** cover.  This includes payment for actual loss of wages.  **We** are not obligated to repay any expenses incurred by an **insured person** if the **insured person** takes any action or makes any payments other than for covered expenses.  **Our** payment for lost wages will not exceed:

1.      $150 per day; nor

2.      A total of $5000 per **insured person**.

### Retained Limit
**Retained limits** vary by state.  The **retained limit** that applies to this policy is determined by the state shown in the address in the Policy Declarations and the dollar amount shown below for that state.

Page 27 –COMPLAINT FOR DECLARATORY JUDGMENT

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

\* \* \*

***Excess Liability Insurance − Personal Injury
Coverage XP***

Under **Excess Liability Insurance Personal Injury**, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **personal injury**. **Personal injury** must arise from a covered **occurrence**.

**We** will not pay any punitive or exemplary damages, fines and penalties.

***Losses We Cover Under Excess Liability
Insurance Personal Injury***
**We** will cover an **occurrence** arising only out of:
1.      Personal activities of an **insured person**.

2. A volunteer civic service which an **insured person** performs without pay, for a not-for profit corporation and which is not a function of that person's **business**.

Payment or reimbursement for reasonable expenses actually incurred by an **insured person** in connection with the volunteer civic service is not considered pay.

***Exclusions- Losses We Do Not Cover Under
Excess Liability Insurance − Personal injury***
This coverage does not apply:

\* \* \*

4.      To **personal injury** sustained by an **insured person**.

\* \* \*

7.      To **personal injury** arising from any contract or agreement, whether written or oral.

\* \* \*

10.      To **personal injury** that results in a claim where an **insured person** has concealed or misrepresented any material fact or circumstance if such misrepresentation or concealment of material fact or circumstance was made with the intent to deceive.

\* \* \*

12.      To **personal injury** intended by, or which may

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

reasonably be expected to result from the intentional acts or omissions of, any **insured person**. This exclusion applies even if:

        a)      such **personal injury** is of a different kind or degree than that intended or reasonably expected; or

        b)      such **personal injury** is sustained by a different person than intended or reasonably expected.

13.      To **personal injury** arising out of, or which may reasonably be expected to result from, the criminal acts of any **insured person**. This includes any **personal injury** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person**. This exclusion applies even if:

        a)      such **personal injury** is of a different kind or degree than that intended or reasonably expected; or

        b)      such **personal injury** is sustained by a different person than intended or reasonably expected.

\* \* \*

*Limit Of Liability*
**Our** total liability under **Excess Liability Insurance – Personal injury** for damages arising out of one **occurrence** will not exceed the "each occurrence" limit shown on the Policy Declarations, regardless of the number of:
1.      **insured person**s;
2.      claims;
3.      claimants;
4.      injured persons; or
5.      policies involved.

The "Annual Aggregate Limit" for **Excess Liability Insurance – Personal injury** shown on the Policy Declarations is the most **we** will pay for all damages resulting from all **occurrences** that occur during the policy period regardless of when the amounts were paid.

*Amounts We Pay*
**We** will pay only that amount of damages which exceeds the sum of:
1.      the limits of liability of the underlying insurance which apply to the **occurrence**; plus

2.      the limits of any and all other liability insurance available to an **insured person** which apply to the **occurrence**.

If no other insurance is required or no other insurance applies to the **occurrence**, **we** will pay only those

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

amounts which exceed the retained limit, up to the applicable limit of liability shown on the Policy Declarations for **Excess Liability Insurance – Personal injury** .

In no event shall **we** pay any amount above **our** limit of liability.

***When We Pay***
**We** will not begin to make payment for any damages resulting from an **occurrence** covered by this policy until **our** liability has been determined by:
1.      agreement between the claimant and **us**; or

2.      a final judgment against an **insured person**. Claim for payment must be made within 12 months after determination of **our** liability.  If additional claims are filed due to the same **occurrence**, payment will be made within 30 days after the **insured person** gives us proper proof.

***Defense We Will Provide***
**We** will defend an **insured person** sued as the result of an **occurrence** covered by this policy.  **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

When defense is provided by the insurer providing any other liability insurance, **we** do maintain the right to join in the defense of any claim or suit which may require us to pay.

**We** may be prevented from defending an **insured person**, in any country, due to laws or for other reasons. In that event, **we** will pay any expense incurred, with **our** written consent, for the **insured person's** defense.

**We** may investigate and settle any claim or suit as **we** consider appropriate."

* * *

## IV.    <u>DECLARATORY JUDGMENT ACTION</u>

10.     A justiciable controversy exists between the parties hereto.  This controversy

can be resolved by this Court through entry of its judgment declaring the rights and liabilities

of the parties alleged herein under the contracts of insurance alleged above.

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

11.     There is no coverage or duty to defend or indemnify Roger A. Plautz and

Linda S. Plautz under the Policy for the following reasons:

     11.1   There is no defined "occurrence" asserted in the Complaint with

           respect to the claims asserted in the lawsuit filed against Roger A.

           Plautz and Linda S. Plautz with respect to the Policies Allstate issued.

     11.2   The lawsuit filed against Roger A. Plauz and Linda S. Plautz seeks

           recovery for economic loss due to alleged loss benefit of the bargain.

           No claims for potentially covered or defined "bodily injury" "property

           damage" or "personal injury" have been asserted in the Complaint.

     11.3   The Policies Allstate issued exclude intentional acts.

     11.4   There is no coverage for any liability arising out of any contract or

           agreement under the Policies Allstate issued.

     11.5   The Policies exclude indemnity whenever any benefit of coverage

           would accrue directly or indirectly to an "insured person."

     11.6   Claims for Fraud or Misrepresentation are excluded, and said claims do

           not constitute accidental conduct meeting the definition of an

           "occurrence," assert intentional conduct and do not allege defined

           "bodily injury" "property damage" or "personal injury."

     11.7   For such other basis in law or fact that may apply in regard to the

           Policies enumerated above, as may be further determined during the

           pendency of litigation.

12.     The Court should enter a Judgment wholly in favor of Allstate declaring,

adjudicating, and decreeing that Allstate is not obligated to provide coverage or a defense to

Roger A. Plautz and Linda S. Plautz, husband and wife, in regard to the claims asserted

against them, and further enter an order that Robert S. Apgood, individually, and as Trustee

of the Robert S. and Nancy B. Apgood living trust, is owed nothing in regard to insurance

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636

indemnity on the claims he has alleged with respect to the coverages allowed under the Policy.

WHEREFORE, Allstate prays for relief as follows:

1.     For Judgment against Defendants declaring that the contract of insurance issued by Allstate does not obligate Allstate to provide coverage or a defense to Roger A. Plautz and Linda S. Plautz, husband and wife, and further enter an order that Robert S. Apgood, individually and as Trustee of the Robert S. and Nancy B. Apgood Living Trust, is owed nothing with respect to the coverages allowed under the Policy in regard to his claims.

2.     For Allstate's costs and such other and further relief as may be deemed just and equitable.

DATED this 25th day of January, 2022.

FOLEY SAMPSON & NICHOLES, PLLC

By  /s/ DOUGLAS F. FOLEY
      Douglas F. Foley, WSBA #13119
      E-mail: doug.foley@dougfoleylaw.com

By  /s/ ALAYNA L. NICHOLES
      Alayna L. Nicholes, WSBA #40993
      E-mail: alayna.nicholes@dougfoleylaw.com
      Of Attorneys for Plaintiff

**Foley Sampson & Nicholes, PLLC**
13115 NE 4th Street, Suite 260
Vancouver, WA 98684
Telephone: 360.883.0636