UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROGER A PLAUTZ and LINDA S. PLAUTZ, husband and wife; ROBERT S. APGOOD, individually and as Trustee for the ROBERT S. AND NANCY B. APGOOD LIVING TRUST; JAMES S. GLENN and "JANE DOE" GLENN, husband and wife; and LEGACY HOME INSPECTIONS, LLC, a Washington Limited Liability Company, et al.,<br><br>Defendants. | CASE NO. 2:22-cv-00068-BAT<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Allstate Property and Casualty Insurance Company ("Allstate") seeks an order of summary judgment declaring it is not obligated to provide coverage or a defense to Defendants Roger A. Plautz and Linda S. Plautz ("Defendant Plautz") as to claims asserted by Robert S. Apgood, individually and as Trustee for the Robert S. and Nancy B. Apgood Living Trust ("Defendant Apgood") in *Robert S. Apgood, et. al. v. Roger A. Plautz, et. ux. and et. al.*, Snohomish County Superior Court Case No. 21-2-05991-31 ("Underlying Action"). Dkt. 42.

BACKGROUND

In state court, Defendant Apgood sued Defendant Plautz in the Underlying Action for fraudulent inducement and negligence for allegedly misrepresenting or not disclosing material

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

facts in the sale of a residence. Dkt. 1, Ex. 1. Defendant Apgood alleged claims of fraud in the inducement by Defendant Plautz for providing an incomplete and false report regarding the condition of the house, and negligence for failing to reveal roof damage.

Defendant Plautz was insured under an Allstate Homeowners Policy and an Allstate Personal Umbrella Policy ("Allstate Policies"). Dkt. 43, Declaration of Douglas F. Foley, Ex. 1 and 2. The Personal Umbrella Policy adopts the same coverages under Section 1 of the Homeowners Policy. Relevant provisions of the Allstate Policies are set forth in Allstate's Complaint (Dkt. 1) and motion for summary judgment (Dkt. 42).

James S. Glenn and Legacy Home Inspections, LLC ("Glenn/Legacy") are named in this declaratory judgment action only as named defendants in the Underlying Action.[1]

## MOTION TO STRIKE

Defendant Plautz requests the Court strike pages 25 through 47 of Allstate's motion because it exceeds the page limits of LCR 7(e)(3). LCR 7(2)(6) states a court "may" refuse to consider any text not included within the page limits.

Allstate's motion for summary judgment is overlong because it included in its motion, the allegations asserted in the complaint filed in the underlying state action and relevant language of Allstate's Homeowner's Policy. The complaint and policy are of record. Dkt. 1-1; 1-2. Other than the complaint's allegations and policy language, which were included for ease of reference, the legal arguments and case law of the brief fall within the required page limit. While the motion of summary judgment exceeds the limit set by the Court's local rules, the Court in its

---

[1] Glenn/Legacy neither supports nor opposes Plaintiff's Motion for Summary Judgment but asks that if the Court grants Allstate's motion, the ruling be made without prejudice to any potential crossclaim Glenn/Legacy may assert against Defendants Plautz. Dkt. 46. Allstate's Complaint for Declaratory Judgment addresses only whether there is coverage or a duty to defend or indemnify Defendants Plautz. Liability issues in the Underlying Action are not before this Court.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

discretion declines to simply strike pages 25 through 47. The Court does not find Defendant Plautz has shown any compelling reason this Court should not consider the entirety of Allstate's motion. Accordingly, the motion to strike is **denied**. Because the Court denies the motion to strike the motion on the grounds that it overlength, Allstate's motion to file an overlength brief is granted. *See* Dkt. 49.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially demonstrate the absence of any genuine issue of material fact for trial, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), after which the burden shifts to the opposing party to identify specific material facts that are genuinely disputed, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Courts assessing a summary judgment motion view the facts and draw reasonable inferences in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A factual dispute must be genuine and not "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id*. at 380. Mere assertions in legal papers cannot create a genuine dispute. *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982). There must be evidence on which the jury could reasonably rely to find for the non-movant. *Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

Allstate seeks a declaration that Allstate does not have a duty to defend or indemnify Defendant Plautz for the claims alleged by Defendant Apgood in the Underlying Action. As this case hinges on the interpretation of an insurance policy, the insured (Defendant Plautz) has the

burden to prove the loss falls within the scope of the policy's insured losses. *McDonald v. State Farm Fire Cas. Co.*, 119 Wn.2d 724, 731, 837 P.2d 1000 (1992) (insured had burden to prove the losses were "accidental direct physical losses"). The interpretation of an insurance policy is a question of law. *Grange Insurance Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989).

A. <u>Duty to Defend and Indemnify</u>

"The duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn. 2d 43, 52 (2007). Whether an insurer has a duty to defend a complaint "must be determined from the four corners of the complaint and the four corners of the insurance policy." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 806, 329 P.3d 59 (2014). The duty to defend does not arise for claims which are not covered by the policy. *Goodstein v. Continental Cas. Co.*, 509 F.3d 1042, 1055 (9th Cir. 2007). In other words, if there is no duty to defend because there is no coverage, there is no duty to pay. *Truck Insurance Exchange v. VanPort Homes, Inc.*, 147 Wn.2d 751, 760, 58 P.3d 276 (2002).

B. <u>"Occurrence" Under Allstate Policies</u>

The Allstate Policies provide coverage for damages due to "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the policies. Dkt. 43, Foley Dec., Ex. 2. An "occurrence" is defined as an accident. "A loss is 'accidental' when it happens without design, intent, or obvious motivation." *Roller v. Stonewall Insurance Co.*, 115 Wn.2d 679, 685, 801 P.2d 207 (1990). Where, as here, the insurance policies do not define "accident," Washington courts have repeatedly held:

> "[A]n accident is never present when a deliberate act is performed unless some additional, unexpected, independent and unforeseen happening occurs which

> produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual."

*Safeco Insurance Co. of America v. Butler*, 118 Wn.2d 383, 401, 823 P.2d 499 (1992).

The term "accident" pursuant to this "common sense" definition is not subjective in nature. *Roller*, 115 Wn.2d at 685. "Either an incident is an accident, or it is not." *Id*. "Thus, the perspective of the insured is not a relevant inquiry." *Id*. Furthermore, "where the insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable." *Schorno v. State Farm Fire and Casualty Company*, 2010 WL 3119449, at *5 (W.D. Wash. Aug. 3, 2010) (citing *State Farm Fire & Cas. Co. v. Ham & Rye, LLC*, 142 Wn. App. 6, 17, 174 P.3d 1175 (2007); *State Farm Fire & Cas. Co. v. Parrella*, 134 Wn. App. 536, 540, 141 P.3d 643 (2006)). Washington courts have "routinely denied" coverage "for intentional acts as a matter of law, even when the harm is unintended." *Id*. (citing *Pacific Ins. Co. v. Catholic Bishop of Spokane*, 450 F.Supp.2d 1186, 1198 (E.D. Wash. 2006).

The Allstate Policies do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person. This exclusion applies even if: a) such insured person lacks the mental capacity to govern his or her conduct; b) such bodily injury or property damage is of a different kind or degree than intended or reasonably expected; or c) such bodily injury or property damage is sustained by a different person than intended or reasonably expected. Dkt. 43, Foley Decl., Ex. 2, pg. 49 of 64.

The Allstate Policies specifically exclude property damage to property owned by an insured person whenever any benefit of coverage would accrue directly or indirectly to an insured person. Dkt. 42, Foley Decl., Ex. 2, pg. 48 of 64).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

With the foregoing in mind, the Court turns to Defendant Apgood's claims in the Underlying Action.

C. <u>Fraud In Inducement</u>

Allstate argues Defendant Apgood's claim of fraud in the inducement is not accidental as a matter of law. The Court agrees.

Fraud in the inducement consists of nine essential elements which must be proven by clear, cogent and convincing evidence: (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; and (9) his consequent damage. *Martin v. Miller*, 24 Wn. App. 306, 600 P.2d 698 (1979). To prevail on this claim, Defendant Apgood must prove intentional (not accidental) conduct. The Complaint in the Underlying Action alleges, in pertinent part:

> On Form 17, by checking the box in the "No" column in response to the question, "Has the roof leaked in the last 5 years?" Plautz made a representation of an existing fact, thereby satisfying element 1. Dkt. 1-1, ¶56.
>
> The statement was material as to the condition of the roof and any resulting damage that might be caused by a leak, thereby satisfying element 2. *Id.*, ¶57.
>
> The representation was false as the roof had been chronically leaking for several years, thereby satisfying element 3. *Id.*, ¶58.
>
> Plautz knew that the representation was false, as evidenced by the blue plastic tote situated under the most egregious leaking portion of the roof thereby satisfying element 4. *Id.*, ¶59.
>
> By checking the "No" box, Plautz intended that Apgood act upon the information by concluding that the statement, was true, thereby moving Apgood closer to purchasing the 5829 House, thereby satisfying element 5. *Id.*, ¶60.
>
> Apgood did not know that the representation was false (Dkt. 1-1, Ex. 1, Apgood Decl. ¶20), thereby satisfying element 6. Dkt. 1-1, ¶61.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

> Apgood reasonably relied on the truth of the representation based upon Plautz's signing and dating Form 17, combined with the Report failing to indicate roof damage and leaking, thereby satisfying element 7. *Id.*, ¶62.
>
> Apgood had a right to rely on the representations, because, in his experience in both purchasing and selling homes, he had never knowingly made such misrepresentations and had never encountered another seller who knowingly made such misrepresentations. Apgood's right of reliance is bolstered by the Report (coming from a purportedly licensed and certified inspection company), thereby satisfying element 8. Dkt. 1-1, ¶63.
>
> Plaintiff was damaged by having to suffer numerous leaks and, ultimately, having to replace the roof at a cost of $$41,953.10, plus costs of remediation, thereby satisfying element 9. *Id.*, ¶64.

Defendant Apgood alleges Defendant Plautz deliberately and intentionally failed to reveal the condition of the property involving water penetration and water damage in the roof and home. Defendant Apgood also alleges Plautz submitted a false seller disclosure statement by checking the box "the roof hasn't leaked within the last five years." Thus, the claim does not assert an "occurrence" defined by the Allstate Policies as an accident.

In response to Allstate's motion for summary judgment, Defendant Plautz does not contend the fraudulent inducement claim is covered under the Allstate Policies. Thus, summary judgment as to Allstate's duty to defend Defendant Plautz and duty to indemnify Defendant Apgood as to the fraudulent inducement claim is appropriate and **granted**.

D.      Negligence

Allstate contends the claim for negligence cannot be construed as an accident. The Court agrees because Defendant Apgood's claim of "negligence" alleges intentional conduct:

> "*Knowing* that he was intending to use the Report as a tool to entice buyers to purchase the 5829 House, and further *knowing* that extensive damage to the roof resulting from water leaking through the roof was found in the secondary attic space, Plautz *knowingly* breached this duty to inform Glenn and Legacy in order to secret [sic] the damage, satisfying element 2."

Dkt. 1-1, ¶ 74 [emphasis added]. Defendant Apgood specifically alleges the Plautz Defendants

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

knew that "extensive roof damage resulted from water leaking through the roof" as they positioned a large blue plastic tote in the attic to capture water from the leaking roof:

> "The Krown team [roofing and gutter repair specialists hired by Defendant Apgood] also observed evidence of roof leakage in the form of water stains. Of greater significance, they found an area containing evidence of significant previous leakage that also had a large blue plastic tote that had been positioned to capture water from rains entering the attic space through holes in the roof. *Id*. at ¶ 13 and Exhibits C, D and E thereto. Based upon the presence of the blue plastic tote positioned to capture water from the leaking roof, Plautz was aware the roof of the home leaked water. * * * On Form 17, by checking the box in the "No" column in response to the question, "Has the roof leaked in the last 5 years?" Plautz made a representation of an existing fact, thereby satisfying element 1.
>
> * * *
>
> Plautz knew that the representation was false, as evidenced by the blue plastic tote situated under the most egregious leaking portion of the roof, thereby satisfying element 4." Dkt. 1-1, ¶¶ 31, 32 & 59.

The description of Defendant Plautz placing "a large blue plastic tote . . . positioned to capture water from rains entering the attic space through holes in the roof" demonstrates knowledge and an intentional failure to disclose. Further the complaint Defendant Apgood filed alleges Plautz not only knowingly concealed the damage, but that Plautz concealed it "in order to secret [sic] the damage," i.e., hid the damage intentionally.

Defendant Plautz argues "negligence" is a "potentially covered claim," because "negligence" does not "require intent" and is not necessarily excluded under the Allstate Policies. Dkt. 47 at 3-4. However, merely pleading negligence does not transform a deliberate act into an accident. Courts will scrutinize a complaint carefully crafted to avoid intentional language and may still, in an appropriate case, find intentional torts. *See New York Underwriters Ins. Co. v. Doty*, 58 Wn. App. 546, 794 P.2d 521 (1990). An act is deliberate when it is "done with awareness of the implications or consequences of the act." *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 755- 756, 320 P.3d 77 (2013), *citing Nationwide Mut. Ins. Co. v. Hayles, Inc.*, 136

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8

Wn. App. 531, 538, 150 P.3d 589 (2007). A reasonably foreseeable harm resulting from deliberate conduct is not an "accident." *Id*.

Defendant Plautz argues summary judgment is premature because no substantive discovery has occurred. Dkt. 47 at 5. However, Defendant Plautz has had over a year since the filing of the underlying state action in December 2021 to obtain any needed discovery and provides no reason for not doing so. Additionally, no discovery is needed for the interpretation of an insurance contract. Defendant Plautz also claims his "state of mind" needs discovery, but this is evidence already in his possession. Defendant Plautz could have shown a dispute of material fact with a declaration averring he did not know the roof was leaking or the electrical panel was recalled, but he did not.

Defendant Plautz also argues the summary judgment motion places him in the impossible position of proving he was "negligent" to "preserve coverage" while simultaneously defending against the negligence claim in the state courts. Dkt. 47 at 6. In his response however, Defendant Plautz implies he was not negligent because he did not know the roof was leaking. Thus, Defendant Plautz is not in an impossible position because he does not need to admit negligence to obtain coverage.

Next, Defendant Plautz argues negligent failure to disclose is a covered "occurrence" because the Court must "consider evidence of the Plautz's subjective state of mind and even under an objective standard" summary judgment should be denied. Dkt. 47 at 8. In support, counsel for Defendant Plautz states "it is entirely possible the Plautzes were unaware of any alleged roof leaks. It is entirely possible the roof was not actively leaking when the Apgoods bought the home from the Plautzes." *Id*. at 9. Counsel's speculations about what Defendant Plautz knew and whether it was "possible" the roof was not actively leaking are not admissible

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 9

facts and are not sufficient to establish Defendant Plautz's state of mind and defend summary judgment. Moreover, the negligence claim in the underlying state action alleges Defendant Plautz *knowingly* hid defects in order to "secret the damage" from Defendant Apgood. This is an allegation Defendant Plautz acted intentionally. The Allstate Policies exclude "intentional" damage so Defendant Plautz must go beyond the pleadings and identify facts which show a genuine issue for trial. Defendant Plautz fails to provide admissible evidence to support the speculation of what might be "possible" or to contradict the allegation in the Underlying Complaint that Defendant Apgood eventually discovered a plastic bucket placed under the leaking roof in an uninspected part of the attic – all of which show Defendant Plautz knew about, but intentionally hid the leaking roof and water damage.

Defendant Plautz also argues even a deliberate act could be an "accident" and thus is covered by the insurance policy if unforeseen damages occur. Dkt. 47, p. 8. Defendant Plautz argues there is nothing showing Defendant Plautz "intended" the harm Defendant Apgood alleges, only "rank speculation." However, the allegations against Defendant Plautz are neither speculative nor do they involve unforeseen damages. Rather, Defendant Apgood alleges Defendant Plautz knew the home had a leaking roof and a recalled electrical panel that needed replacement. Defendant Plautz presents no admissible evidence denying or contradicting the allegations and therefore, these are not "speculative" allegations. Moreover, damages flowing from the leaking roof and recalled panel are predictable damages, not unforeseen damages.

Defendant Plautz also argues Allstate has a duty to defend because "the question is whether the Plautz's negligently or mistakenly believed the roof of their home was in good repair." Dkt. 47 at 11. This would be a "question" if Defendant Plautz had submitted admissible evidence establishing a material dispute of fact over his state of mind or knowledge, rather than

resting on counsel's arguments about what might be "possible." Defendant Plautz submits nothing in support of his opposition. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the [C]ourt may . . . consider the fact undisputed for purposes of the motion" or the Court may "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). Here, it is undisputed: 1) the "negligence" and "fraud in the inducement" claims asserted in the underlying state action allege intentional conduct and actions that do not constitute a defined "occurrence" (which requires an accident from an objective, not subjective, perspective) under the terms of the Allstate Policies; and 2) the intentional acts exclusion precludes coverage for damages resulting from intentional conduct.

Finally, there is no potential for covered "property damage" as required by the terms of the Allstate Policies because the damages sought by Defendant Apgood are economic in nature due to an alleged loss of benefit of a bargain. The Allstate Policies define property damage as "physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction." Dkt. 43, Foley Declaration, Ex. 2. The claims of fraud in the inducement and negligence in the Underlying Complaint contain no such allegations. Rather, Defendant Apgood incurred economic damages. *See id*., Ex. 1 at ¶ 64 (Plaintiff was damaged by having to suffer numerous leaks and, ultimately, having to replace the roof at a cost of $41,953.10, plus costs of remediation); ¶ 77 (As a result of secreting the secondary attic space, the Report contained no information on the water damage, resulting in Apgood eventually purchasing the 5829 House and subsequently being required to have a new roof installed in the amount of $41,953.10.)  Such economic loss is outside of the scope of Allstate's policies. *See*, *e.g.*, *Safeco Ins. Co. of America v. Andrews*, 915 F.2d 500 (9th Cir. 1990) (no duty to defend in

action arising from insured's alleged misrepresentations in connection with sale of property.) *See also*, *Allstate Insurance Co. v. Miller*, 743 F.Supp. 723 (N.D.Cal.1990) (alleged negligence in failing to inspect and inform of defects and for misrepresentation did not expose insured to liability for damage to tangible property; but rather, for economic loss resulting from insured's alleged failure to discover and disclose facts relevant to the property's value and desirability.)

In summary, what the Court is left with are the undisputed allegations Defendant Plautz hid a leaking roof that he knew about because he put a plastic bucket under the leaking section in the attic and he failed to disclose this problem and failed to disclose that the electrical panel had been recalled. Allstate's Policies unambiguously state that Allstate will not provide coverage for property damage "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." The allegations in the Underlying Action against the Plautz Defendants constitute intentional acts and bar coverage under Allstate's Policies.

Accordingly, it is **ORDERED** Allstate's motion for summary judgment (Dkt. 42) is **GRANTED** as there is no coverage or duty to defend under the Allstate Policies. The Court denies Plautz's motion to strike portions of Allstate's motion for summary judgment, as overlong, and Allstate's motion for overlength brief, Dkt. 49, is **GRANTED**.

DATED this 3rd day of March, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge